# EXHIBIT 3 TO
# AFFIDAVIT OF
# ROBERT B. HILL

| A | 30046 | Robbins Hose Company #1, Inc | DE | 02/17/2003 | | 2003-000130 | 000 | NFIRS - 1 |
|---|---|---|---|---|---|---|---|---|
| | FDID | Fire Department | State | Incident Date | Station | Incident Number | Exposure | Basic |

**B Location**

| 1 - Street | 97 | | COMMERCE WAY | | | | Census Tract | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| Address Type | Number/Milepost | Prefix | Street or Highway | | | | | | Street Type | Suffix |

DOVER — Apt/Suite/Room · City — DE · State — 19904- · Zip Code

ENTERPRISE PL
Cross street or directions, as applicable

**C Incident Type**
461 - Building or structure weakened or collapsed

**D Aid Given or Received**
N - None
Mutual Aid Code / Their FDID
Their State / Their Inc. #

**E₁ Dates & Times**

| | Date | Time |
|---|---|---|
| Alarm | 02/17/2003 | 06:37 |
| Arrival | 02/17/2003 | 06:41 |
| Controlled | 02/17/2003 | 08:59 |
| Last Unit | 02/17/2003 | 09:05 |

**E₂ Shift & Alarms**

| 4 | 1 | | ALL |
|---|---|---|---|
| Shift | Alarms | District | Alarm Box |

**E₃ Special Studies**

Special Study ID    Special Study Value

**F Actions Taken**

1  55 - Establish safe area

2  43 - Hazardous materials spill control and confinement

3

**G₁ Resources**

☐ Check if Apparatus or Personnel form is used

| | Apparatus | Personnel |
|---|---|---|
| Suppression | 6 | 0 |
| EMS | 0 | 0 |
| Other | 0 | 0 |

☐ Includes Aid from Resources

**G₂ Est. Dollar Losses & Values**

LOSSES:
Property    $0
Contents    $0

PRE-INCIDENT VALUE
Property    $0
Contents    $0

**Completed Modules**
☐ FIRE-2
☐ Structure-3
☐ Civilian Fire Cas.-4
☐ Fire Serv. Casualty-5
☐ EMS-6
☐ HazMat-7
☐ Wildland Fire-8
☐ Apparatus-9
☐ Personnel-10
☐ Arson-11

**H₁ Casualties**

| | Deaths | Injuries |
|---|---|---|
| Fire Service | 0 | 0 |
| Civilian | 0 | 0 |

**H₂ Detector**

**H₃ Hazardous Materials Release**

**I Mixed Use Property**

**J Property Use**    891 - Warehouse

**K₁ Person/Entity**

Business name (if applicable)    302-741-8500 · Phone Number

Mr., Ms, Mrs · First Name · MI · CLIENT LOGIC · Last Name · Suffix

Number · Prefix · Street or Highway · Street Type · Suffix

Post Office Box · Apt/Suite/Room · City · State · Zip Code

| 30046 | Robbins Hose Company #1, Inc | DE | 02/17/2003 | | | 2003-000130 | 000 | No Activity | NFIRS - 1 |
|---|---|---|---|---|---|---|---|---|---|
| FDID | Fire Department | State | Incident Date | Station | | Incident Number | Exposure | | Basic - pg 2 |

## K₂  Owner

| | | 302-674-1965 | |
|---|---|---|---|
| Business name (if applicable) | | Phone Number | |

| | | | | DEL HOMES GROUP | | |
|---|---|---|---|---|---|---|
| Mr., Ms, Mrs | First Name | MI | Last Name | | | Suffix |

| | | | | |
|---|---|---|---|---|
| Number | Prefix | Street or Highway | Street Type | Suffix |

| | | DOVER | | DE | 19904- |
|---|---|---|---|---|---|
| Post Office Box | Apt/Suite/Room | City | | State | Zip Code |

## L  Remarks     For Additional Notes. Please Run the Report Entitled "User Defined and Notes"

snow storm
building collapse, fire department made sure everyone was out, called city to shut down water and electric to the
entire building, Cheasapeke was called to shut the gas off to the entire building

## M  Authorization

| 227-BASHISTA, BRIAN F | | | | 02/17/2003 |
|---|---|---|---|---|
| Officer in Charge | Signature | Position | Assignment | Date |

| 184-OSIKA, JASON | | | | 02/21/2003 |
|---|---|---|---|---|
| Member Making Report | Signature | Position | Assignment | Date |

ECE857

EXHIBIT "D"

```
 1            UNITED STATES DISTRICT COURT
 2             FOR THE DISTRICT OF DELAWARE
 3     - - - - - - - - - - - - - - - - - - - - x
       FEDERAL INSURANCE      : CIVIL ACTION
 4     COMPANY a/s/o          :
       EZIBA.COM./AVACET,     : NO. 04-339
 5     INC., EZIBA            :
       SECURITIES CORP.,      :
 6             Plaintiff(s),  :
               v.             :
 7     LIGHTHOUSE             :
       CONSTRUCTION, INC.,    :
 8     BECKER MORGAN GROUP,   :
       INC., and O'DONNELL,   :
 9     NACCARATO &            :
       MACINTOSH, INC.,       :
10             Defendant(s).  :
       - - - - - - - - - - - - - - - - - - - - x
11     MILLERS CAPITAL        : CIVIL ACTION
       INSURANCE COMPANY      :
12     a/s/o DEL-HOMES        : NO. 04-1322-JJF
       CATALOG GROUP, LLC,    :
13             Plaintiff(s),  :
               v.             :
14     LIGHTHOUSE             :
       CONSTRUCTION, INC.,    :
15     BECKER MORGAN GROUP,   :
       INC., and O'DONNELL,   :
16     NACCARATO &            :
       MACINTOSH, INC.,       :
17             Defendant(s)   :
       and                    :
18     LIGHTHOUSE             :
       CONSTRUCTION, INC.,    :
19             Defendant and  :
               Third-Party    :
20             Plaintiff,     :
               v.             :
21     EAST COAST ERECTORS,   :
       INC.,                  :
22             Third-Party    :
               Defendant.     :
23     - - - - - - - - - - - - - - - - - - - - x
24
```

A-35

1                    Oral deposition of ROBERT C.

2   MacLEISH, held at the law offices of

3   CHRISSINGER & BAUMBERGER, 3 Mill Road,

4   Suite 301, Wilmington, DE 19806, on

5   Wednesday, March 16, 2005, beginning at

6   10:08 a.m., before Debra J. Weaver, a

7   Federally Approved RPR, CRR, CSR of NJ

8   (No. XI 01614) and Delaware (No. 138-RPR,

9   Expiration 1/31/08), and a Notary Public

10  of New Jersey, Pennsylvania and Delaware.

11

12

13

14

15

16

17

18

19

20

21

22            ESQUIRE DEPOSITION SERVICES

        1880 John F. Kennedy Boulevard

23                 15th Floor

        Philadelphia, Pennsylvania 19103

24            (215) 988-9191                A-36

```
 1   APPEARANCES:
 2
             COZEN O'CONNOR
 3           BY:   STEVEN K. GERBER, ESQUIRE
             1900 Market Street
 4           Philadelphia, PA 19103-3508
             215.665.2088
 5           sgerber@cozen.com
 6           --Representing the Plaintiff,
               Federal Insurance Company
 7
 8           WHITE AND WILLIAMS, LLP
             BY:   RON L. PINGITORE, ESQUIRE
 9           1800 One Liberty Place
             Philadelphia, PA  19103
10           215.864.7000
             pingitorer@whiteandwilliams.com
11
             --Representing the Plaintiff,
12             Millers Capital Insurance Co.
13
             CHRISSINGER & BAUMBERGER
14           BY:   DAVID BAUMBERGER, ESQUIRE
             3 Mill Road
15           Suite 301
             Wilmington, DE 19806
16           302.777.0100
17           --Representing the Defendant,
               Lighthouse Construction, Inc.
18
19           TIGHE, COTTRELL & LOGAN, P.A.
             BY:   VICTORIA K. PETRONE, ESQUIRE
20           First Federal Plaza
             P.O. Box 1031
21           Wilmington, DE 19899
             302.658.6400
22           v.petrone@lawtcl.com
23           --Representing the Defendant,
               Becker Morgan Group, Inc.
24
```

A-37

```
 1   APPEARANCES: (cont'd)
 2
         BAILEY & ASSOCIATES, P.A.
 3       BY:  JAMES F. BAILEY, JR., ESQUIRE
         3 Mill Road
 4       Suite 306-A
         Wilmington, DE 19806
 5       302.658.5686
         jbailey@jfbailey.com
 6
         --Representing the Defendant,
 7         Robert MacIntosh
 8
         McLAIN & MERRITT, P.C.
 9       BY:  ROBERT B. HILL, ESQUIRE
         Suite 500
10       3445 Peachtree Road, N.E.
         Atlanta, GA  30326-1276
11       404.266.9171
         bhill@mcclain-merritt.com
12
               AND
13
         WETZEL & ASSOCIATES, P.A.
14       BY:  BENJAMIN C. WETZEL, III, ESQ.
         BY:  NATALIE M. IPPOLITO, ESQUIRE
15       The Carriage House, Suite 201
         1100 North Grant Avenue
16       Wilmington, DE  19805
         302.652.1200
17       bwetzel@wetzellaw.com
         nippolito@wetzellaw.com
18
         --Representing the Defendant,
19         East Coast Erectors, Inc.
20
21
22
23                                        A-38
24
```

```
1    ALSO  PRESENT:

2

          HECKER,  BROWN,  SHERRY  AND
3         JOHNSON,  LLP
          BY:   GEOFFREY  W.  VEITH,  ESQUIRE
4         1700  Two  Logan  Square
          18th  and  Arch  Streets
5         Philadelphia,  PA   19103
          215.446.6236
6         gveith@heckerbrown.com
7         --Representing  Factory  Mutual
             a/s/o  Client  Logic

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24
```

A-39

ROBERT C. MACLEISH

```
 1              THE  WITNESS:   I  think  they
 2         were  a  combination  of  the  two.
 3              MR.  VEITH:   Okay.   Thank
 4         you.
 5  BY  MR.  GERBER:
 6         Q.     How  did  you  learn  about  the
 7  collapse?
 8         A.     My  brother  called  me.
 9         Q.     And  how  did  your  brother
10  learn  about  the  collapse?
11         A.     He's  a  state  police  officer
12  and  was  in  the  emergency  center  and
13  called  me  and  told  me.
14         Q.     What  did  you  do  when  you
15  learned  of  the  collapse?
16         A.     Probably  got,  you  know  --
17  tried  to  figure  out  --  you  know,  wanted
18  to  go  out  and  see  it,  but,  unfortunately,
19  the  snow  was  too  deep,  you  couldn't  move.
20         Q.     When  was  the  first  time  you
21  got  out  to  the  scene  after  the  collapse?
22         A.     Probably  later  on  that
23  afternoon.   He  called  in  the  early
24  morning.
```

A-40

ROBERT C. MACLEISH

1              I had gotten another phone

2    call about three or four hours later from

3    Steve Parker.  He had a building up in

4    another one of Jack's parks, McKee Road,

5    and that building had collapsed.  And he

6    called me and said, you know, he was up

7    there, he had driven up from Lewes.  We

8    then dug out our driveway.  He said, can

9    you come up here, I don't know what to

10   do, I don't know where to go.

11              So I drove up there, saw

12   Steve, saw the building.  And on the way

13   home, I swung by and looked at the

14   Catalog.  I couldn't get too close,

15   though, because they had it cordoned off.

16        Q.    Who is "they"?

17        A.    That had it cordoned off?

18        Q.    Yes.

19        A.    The fire company and

20   everybody.

21        Q.    And that was on the day of

22   the collapse?

23        A.    I believe it was.  I'm

24   trying to recollect.  I think it was on

ROBERT C. MACLEISH

```
 1   that Monday, the 17th.  I'm not
 2   100 percent sure.
 3          Q.    When were you next at the
 4   site?
 5          A.    I was either there the next
 6   morning or the morning after that.
 7                I had contacted Mike
 8   Williams and told him about the collapse
 9   of the building.  And I'd also notified
10   V-P of the collapse of the building
11   there, as well as the one on McKee Road.
12          Q.    What's the one on McKee
13   Road?
14          A.    It was called Atlantic
15   Movers.  I can't remember the address.
16   15 -·· 15 something.  1565, I think it is,
17   McKee Road.  It's a 25,000 square foot
18   pre-engineered steel building.
19          Q.    I was going to ask you.  Was
20   that also a pre-engineered steel
21   building?
22          A.    Yes.
23          Q.    And it also sustained a
24   collapse?
```

A-42

EXHIBIT "E"

Timbie excerpt

1

```
 1          UNITED STATES DISTRICT COURT

 2          FOR THE DISTRICT OF DELAWARE

 3     --------------------x
       FEDERAL INSURANCE    : CIVIL ACTION
 4     COMPANY a/s/o         :
       EZIBA.COM./AVACET,    : NO. 04-339
 5     INC., EZIBA           :
       SECURITIES CORP.,     :
 6            Plaintiff(s), :
              v.             :
 7     LIGHTHOUSE            :
       CONSTRUCTION, INC.,   :
 8     BECKER MORGAN GROUP,  :
       INC., and O'DONNELL,  :
 9     NACCARATO &           :
       MACINTOSH, INC.,      :
10            Defendant(s). :
       --------------------x
11     MILLERS CAPITAL       : CIVIL ACTION
       INSURANCE COMPANY     :
12     a/s/o DEL-HOMES       : NO. 04-1322-JJF
       CATALOG GROUP, LLC,   :
13            Plaintiff(s), :
              v.             :
14     LIGHTHOUSE            :
       CONSTRUCTION, INC.,   :
15     BECKER MORGAN GROUP,  :
       INC., and O'DONNELL,  :
16     NACCARATO &           :
       MACINTOSH, INC.,      :
17            Defendant(s)   :
       and                   :
18     LIGHTHOUSE            :
       CONSTRUCTION, INC.,   :
19            Defendant and  :
              Third-Party    :
20            Plaintiff,     :
              v.             :
21     EAST COAST ERECTORS,  :
       INC.,                 :
22            Third-Party    :
              Defendant.     :
23     --------------------x

24
```

ESQUIRE DEPOSITION SERVICES

                                    2

```
 1          Oral deposition of CHARLES
```

Page 1

A-43

Timbie excerpt

2  N. TIMBIE, P.E., held at the law offices

3  of CHRISSINGER & BAUMBERGER, 3 Mill Road,

4  Suite 301, Wilmington, DE 19806, on

5  Thursday, August 4, 2005, beginning at

6  9:10 a.m., on the above date, before

7  Debra J. Weaver, a Federally Approved

8  RPR, CRR, CSR of NJ (No. XI 01614) and

9  Delaware (No. 138-RPR, Expiration

10  1/31/08), and a Notary Public of New

11  Jersey, Pennsylvania and Delaware.

12

13

14

15

16

17

18

19

20

21
            ESQUIRE DEPOSITION SERVICES
22      1880 John F. Kennedy Boulevard
                 15th Floor
23      Philadelphia, Pennsylvania 19103
                (215) 988-9191
24


                ESQUIRE DEPOSITION SERVICES

                                        3


1  APPEARANCES:

2          COZEN O'CONNOR
           BY:  STEVEN K. GERBER, ESQUIRE
3          1900 Market Street
           Philadelphia, PA 19103-3508
4          215.665.2088
           sgerber@cozen.com
5
                    Page 2

Footer A-44

                         Timbie excerpt
                    --Representing the Plaintiff,
6                     Federal Insurance Company

7

           WHITE AND WILLIAMS, LLP
8          BY:   RON L. PINGITORE, ESQUIRE
           1800 One Liberty Place
9          Philadelphia, PA   19103
           215.864.7000
10         pingitorer@whiteandwilliams.com

11             --Representing the Plaintiff,
                  Millers Capital Insurance Co.
12

13         ROGUT McCARTHY TROY, LLC
           BY:   GEOFFREY W. VEITH, ESQUIRE
14         One First Avenue
           Suite 410
15         Conshohocken, PA   19428
           610.644.5900
16         gwv@rmtllc.com

17             --Representing Factory Mutual
                  a/s/o Client Logic
18

19         CHRISSINGER & BAUMBERGER
           BY:   DAVID BAUMBERGER, ESQUIRE
20         3 Mill Road
           Suite 301
21         Wilmington, DE 19806
           302.777.0100
22         david.baumberger@libertymutual.com

23             --Representing the Defendant,
                  Lighthouse Construction, Inc.
24


                ESQUIRE DEPOSITION SERVICES

                                           4


1    APPEARANCES: (cont'd)

2          TIGHE, COTTRELL & LOGAN, P.A.
           BY:   VICTORIA K. PETRONE, ESQUIRE
3          First Federal Plaza
           P.O. Box 1031
4          Wilmington, DE 19899
           302.658.6400
5          v.petrone@lawtcl.com

6              --Representing the Defendant,
                  Becker Morgan Group, Inc.
7

8          BAILEY & ASSOCIATES, P.A.
           BY:   JAMES F. BAILEY, JR., ESQUIRE
                        Page 3

                            Timbie excerpt
 9          3 Mill Road
            Suite 306-A
10          Wilmington, DE 19806
            302.658.5686
11          jbailey@jfbailey.com
            (not present)
12
            --Representing the Defendant,
13            Robert MacIntosh
14
            McLAIN & MERRITT, P.C.
15          BY:  ROBERT B. HILL, ESQUIRE
            Suite 500
16          3445 Peachtree Road, N.E.
            Atlanta, GA  30326-1276
17          404.266.9171
            bhill@mcclain-merritt.com
18
                    AND
19
            WETZEL & ASSOCIATES, P.A.
20          BY:  NATALIE M. IPPOLITO, ESQUIRE
            The Carriage House, Suite 201
21          1100 North Grant Avenue
            Wilmington, DE  19805
22          302.652.1200
            nippolito@wetzellaw.com
23
            --Representing the Defendant,
24            East Coast Erectors, Inc.


                ESQUIRE DEPOSITION SERVICES

▯

                                                44


 1     you did, you would expect the loads on

 2     the joists and the stresses in the joists

 3     to be less than what you calculated in

 4     your theoretical calculations; is that

 5     right?

 6          A.   Yes, sir.

 7          Q.   And it's just a matter of

 8     math what the difference is?

 9          A.   Just a matter of math.

10          Q.   Okay.  You haven't done

11     anything, have you, to determine the

12     density of snow or wind direction or the
                        Page 4

Timbie excerpt
23        Q.    MMG 1705 is a letter about a

24   meeting that's going to be held with

ESQUIRE DEPOSITION SERVICES

                                                    124

 1   lawyers.  Do you remember that meeting,

 2   October 27th of 2003?

 3        A.    Yeah.  It was a while ago,

 4   but I recall Mr. Gerber and Mr. Veith and

 5   Mr. Pingitore, or Mr. Schmidt.

 6        Q.    Okay.  Do you know if Mr.

 7   Gerber and Mr. Veith or their clients are

 8   participating in the payment of your

 9   bill?

10        A.    I believe they are.  They

11   haven't yet.

12        Q.    And could you tell me, as

13   best you can, the subject matters

14   discussed at that meeting?

15        A.    They asked for an opinion as

16   to the cause of collapse of the '95

17   building.  And so I just reviewed what I

18   thought happened.

19        Q.    And was that the same as

20   what you've told us today?

21        A.    Yes.

22        Q.    I mean, was there any

23   discussion of any concerns about the

24   specification of the design loads for the

Timbie excerpt

125

1   '95 building or the addition of gravel
2   ballast to the '95 building?
3           A.    I don't think -- well, I'm
4   sure the gravel was discussed, but I'm --
5   I don't think I had an opinion about that
6   at that time.
7           Q.    Okay.  And you didn't have
8   an opinion as to whether Varco-Pruden had
9   done anything wrong at that time?
10          A.    That's correct.
11          Q.    Has that changed today?
12          A.    No.
13
14
15
16
17
18
19
20
21
22
23
24

ESQUIRE DEPOSITION SERVICES

126

1                  C E R T I F I C A T E

Page 9

A-48

Timbie excerpt

2

3

4              I hereby certify that the witness was
       duly sworn by me and that the preceding excerpted
5      pages of the deposition are a true record of the
       testimony given by the witness.  The page and line
6      numbers in the final, full deposition may be
       different from the foregoing.
7

8

9              (This is an electronic signature)
       DEBRA J. WEAVER, RPR, CRR, CSR
10     NJ CSR License No. XI 01614
       DE Certification No. 138-RPR
11         (Expires 1/31/08)
       Dated :  August 15, 2005
12

13             (The foregoing certification of this

14     transcript does not apply to any reproduction of the

15     same by any means, unless under the direct control

16     and/or supervision of the certifying shorthand

17     reporter.)

18

19

20

21

22

23

24

25


                    ESQUIRE DEPOSITION SERVICES




                         Page 10


                          A-49

EXHIBIT "F"

Not Reported in A.2d                                                                          Page 1
Not Reported in A.2d, 2002 WL 32007217 (Del.Com.Pl.)
**(Cite as: 2002 WL 32007217 (Del.Com.Pl.))**

**C**

Only the Westlaw citation is currently available.

UNPUBLISHED OPINION. CHECK COURT RULES
BEFORE CITING.

Court of Common Pleas of Delaware.
STATE FARM MUTUAL AUTOMOBILE INSURANCE
COMPANY, as subrogee of Jeffery L.
Norvell, Plaintiff,
v.
Catherine R. BARON and Robert J. Andrews, Defendants.
**No. C.A.2000-09-062.**

Submitted July 26, 2002.
Decided July 26, 2002.
Allan Wendelburg, Esq., Hockessin, DE, for Plaintiff.

Darryl K. Fountain, Esq., Wilmington, DE, for Defendants.

***DECISION AFTER TRIAL***
JAY PAUL JAMES, Associate Judge.

**\*1** The plaintiff, State Farm Mutual Automobile Insurance
Company (hereinafter "State Farm"), as subrogee of Jeffery
L. Norvell (hereinafter "Norvell"), filed this subrogation
action against the defendants, Catherine R. Baron
(hereinafter "Baron") and Robert J. Andrews (hereinafter
"Andrews") to recover damages resulting from a motorcycle
accident. The parties stipulated to $4,377.62 for the property
damage claim and $3,932.36 for the Personal Injury
Protection (hereinafter "PIP") benefits claim.

Trial took place July 18, 2002, and after receipt of the
evidence and conclusion of testimony, the Court reserved
decision.

The Court finds the following relevant facts. On September
5, 1998, Norvell was operating his motorcycle in his
neighborhood. Norvell testified that he noticed Andrews
outside working on his car and his dog was also outside,
unrestrained and sitting about 20 feet away from Andrews
on the lawn. As Norvell proceeded to turn onto the street
where he lived, the dog suddenly darted into the road from
in front of a parked car and hit the motorcycle, causing
Norvell to lose control and fall in the roadway. Norvell

testified that he could not see the dog due to the parked car.
Andrews testified that he never saw his dog run after the
motorcycle but heard the accident, and his dog then became
scared and ran across the street. As a result of the accident,
Norvell suffered personal injuries in the amount of
$3,932.36, and his motorcycle sustained damages in the
amount of $4,377.62.

At trial, counsel raised several issues for the Court to
resolve. First, Defendant's counsel moved to vacate the
default judgment previously entered against Baron. The
parties stipulated that Andrews owns the dog in question
and since State Farm did not object to the motion, it was
granted, and judgment was thereafter entered in favor of
Baron.

Second, Defendant's counsel moved to dismiss the claim
due to State Farm's failure to comply with the two year
statute of limitations. The accident occurred on September
5, 1998. State Farm filed the complaint on September 6,
2000, two years after the initial incident. However, State
farm argues that because it is a PIP case, the statute of
limitations is extended to three years. The Court gave
counsel the opportunity to provide supplemental
memoranda. The Court received supplemental memoranda
from both Plaintiff and Defendant's counsel.

Either a two year or three year statute of limitations applies
depending on the type of case. Presently before the Court
are two types of claims. One claim is for subrogation
recovery of property damage benefits and the other for
subrogation recovery of PIP payments. It is clear the
property damage claim is subject to a two year statute of
limitations pursuant to 10 Del. C. § 8107, that states "[n]o
action to recover damages ... for injury to personal property
shall be brought after the expiration of 2 years from the
accruing of the cause of such action." Because State Farm
failed to file its claim within two years of the date of the
accident, the Court grants Defendant's motion to dismiss as
to the property damage claim.

**\*2** In *Harper v. State Farm Mutual Automobile Insurance
Company,* Del.Supr., 703 A.2d 136 (1997), the Court held
that a PIP carrier's right of subrogation is statutory in nature
and that the applicable statute of limitations is three years as

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d                                                          Page 2
Not Reported in A.2d, 2002 WL 32007217 (Del.Com.Pl.)
**(Cite as: 2002 WL 32007217 (Del.Com.Pl.))**

provided in 10 Del. C. § 8106. Further, the Court held that such cause of action does not accrue until the PIP benefit is paid to or for its insured. Id. Based on the foregoing, it is the Court's finding that the three year statute of limitations is applicable to the present case, and State Farm clearly filed its claim within the three year period. Therefore, Defendant's motion to dismiss is denied as to the PIP claim.

The final issue raised by Plaintiff's counsel was whether the Court may award pre-judgment interest. The award of pre-judgment interest, including both the amount and commencement date thereof, is within the firm discretion of the Court. Under Delaware law, a party is entitled to pre-judgment interest when the amount of damage is calculable and such interest is awarded in contract cases. Citadel Holding Corp. v. Roven, Del.Supr., 603 A.2d 818, 826 (1992). Pre-judgment interest is calculated from the date payment is due, and where the underlying obligation arises out of a contract, the Court should look to the contract to determine when interest begins to accrue. United States ex rel. Endicott Enterprises, Inc. Star Bright Construction Co., 848 F.Supp. 1161 (D.Del.1994); Moskowitz v. Mayor & Council of Wilmington, Del.Supr., 391 A.2d 209, 210 (1978).

In this case, interest would begin to accrue at the time State Farm paid out benefits to its insured, Norvell. However, the Court cannot calculate the amount of interest because there is no evidence in the record as to when State Farm paid its insured. Thus, the Court will not award pre-judgment interest if it finds in favor of Plaintiff State Farm. The Court will now proceed to decide the case on its merits.

Two Delaware Statutes govern the present case. 17 Del. C. § 1705(a) states in relevant part that "[n]o dog shall be permitted to run at large at any time, unless the dog is accompanied by the owner or custodian and under the owner's or custodian's reasonable control." 17 Del. C. § 1711 states that "[t]he owner of a dog is liable in damages for any injury, death or loss to person or property that is caused by such dog, unless the injury, death or loss was caused to the body or property of a person who, at the time, was committing or attempting to commit a trespass or other criminal offense on the property of the owner, or was committing or attempting to commit a criminal offense

against any person, or was teasing, tormenting or abusing the dog."

Additionally, common law negligence is applicable in the present case. For a plaintiff to prevail in a negligence action, plaintiff must show, "by a preponderance of the evidence, that a defendant's negligent act or omission breached a duty of care owed to plaintiff in a way that proximately caused the plaintiff injury." Duphilly v. Delaware Electric Cooperative, Inc., Del.Supr., 662 A.2d 821, 828 (1995) (citing Culver v. Bennett, Del.Supr., 588 A.2d 1094, 1096-97 (1991)). While "the violation of a Delaware statute enacted for the safety of others is evidence of negligence per se," negligence alone is not sufficient to hold a defendant liable for damages, unless it is shown to be a proximate cause of plaintiff's injury. Id.

*3 The Court resolves all issues of credibility in favor of State Farm's insured, Norvell, and finds by a preponderance of the evidence that Andrews breached his duty of care in failing to maintain reasonable control of his dog under the circumstances. There is nothing in the record to indicate Norvell was in any way at fault. Andrews clearly violated 17 Del. C. § 1705(a) and § 1711, and is therefore negligent and liable for any damages resulting from the actions of his dog. Furthermore, the Court finds that Andrew's negligence was the proximate cause of the personal injuries suffered by Norvell.

Accordingly, the Court awards a judgment in favor of Plaintiff State Farm in the amount of $3,932.36 for PIP benefits paid plus the costs of these proceedings, and interest at 10% until the judgment is paid.

**IT IS SO ORDERED.**

Not Reported in A.2d, 2002 WL 32007217 (Del.Com.Pl.)

END OF DOCUMENT

A-51

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

EXHIBIT "G"

Westlaw.

Not Reported in Fed.Cl.                                                    Page 1
Not Reported in Fed.Cl., 1996 WL 532610 (Fed.Cl.)
**(Cite as: 1996 WL 532610 (Fed.Cl.))**

**H**

Only the Westlaw citation is currently available.

United States Court of Federal Claims, Office of the Special
Masters.
Daniel SPOHN and Karen Spohn as Legal Representatives
of Veronica N. Spohn, a
minor, Petitioners,
v.
SECRETARY OF the DEPARTMENT OF HEALTH AND
HUMAN SERVICES, Respondent.
No. 95-0460V.

Sept. 5, 1996.

Jon R. Perry, Pittsburgh, Pennsylvania, for petitioners.

Mary Hampton Mason, U.S. Department of Justice,
Washington, D.C., for respondent.

*DECISION*
ELIZABETH E. WRIGHT, Special Master.

A. BACKGROUND

*1 Petitioners filed this claim under the National Vaccine
Injury Compensation Program [FN1] on *July 18, 1995*.
Petitioners alleged in the petition that Veronica Spohn,
petitioners' daughter, received a diphtheria-pertussis-tetanus
vaccine ("DPT") on *July 19, 1992,* and suffered injuries of
anaphylactic shock and encephalopathy consistent with the
Vaccine Injury Table within the Table time periods. Petition
at ¶¶ 3-7, 9, 14. [FN2]

This matter is before me on respondent's motion to dismiss.
Respondent contends that the vaccination in question was
actually administered on *July 17, 1992,* therefore petitioners
filed this claim outside of the 36-month time period allowed
for in 42 U.S.C.A. § 300aa-16(a)(2). The following issues
must be resolved: (1) On what date did Veronica receive the
vaccine in question? (2) On what date was the first symptom
or manifestation of onset of Veronica's alleged injury? (3)
When did the limitations period for filing this petition begin
and end? (4) If petitioners filed this claim outside of the
statutory period, is the doctrine of equitable tolling
available? (5) If so, under the facts of this case, should the
undersigned call upon equitable remedies?

B. DISCUSSION

1. The Date of Vaccination.

Some immunization records filed with the petition contain
hand-written entries noting a vaccination date of July 19,
1992, a Sunday. P. Ex. 2 at 1, 2, 3. It is not clear when these
records were prepared. However, two clear, hand-written
notations in the pediatrician's contemporaneous office
records, also filed with the petition, indicate a vaccination
date of Friday, July 17, 1992. P. Ex. 3 at 3, 4.

A status conference was held in this matter on December 1,
1995. In light of the discussion therein, the undersigned
instructed the parties to conduct a deposition of Veronica's
pediatrician, Dr. Sekaran, who administered the inoculation,
in order to determine the exact date of vaccination. *See*
Order dated Dec. 5, 1995. Respondent filed the deposition
transcript on January 22, 1996.

Dr. Sekaran testified during her deposition that the
inoculation in question was administered to Veronica on
Friday, July 17, 1992, consistent with the date indicated in
her contemporaneous office notes. She also noted that her
office was closed on Sundays during the relevant time
period. Deposition of Dr. Sekaran, filed January 22, 1996.
Moreover Dr. Sekaran provided additional documentation
during the deposition that supported her testimony regarding
the date of administration of the vaccination. *Id.* at Tab 2.
[FN3] Dr. Sekaran testified that she erroneously entered the
July 19, 1992, date in the immunization records for the
vaccination in question. *Id.* at 6-7. Given all of the medical
records and Dr. Sekaran's deposition, it is clear that the
actual date of vaccination in this matter was July 17, 1992.

2. The First Symptom or Manifestation of Onset of Injury.

Section 300aa-(16)(a)(2), the statute of limitations
applicable to this claim, states:
*2 In the case of--
(2) a vaccine set forth in the Vaccine Injury Table which
is administered after the effective date of this subpart, if a
vaccine-related injury occurred as a result of the
administration of such vaccine, no petition may be filed
for compensation under the Program for such injury after
the expiration of 36 months after the date of the

A-52

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in Fed.Cl.                                                                    Page 2
Not Reported in Fed.Cl., 1996 WL 532610 (Fed.Cl.)
**(Cite as: 1996 WL 532610 (Fed.Cl.))**

occurrence of the first symptom or manifestation of onset
or of the significant aggravation of such injury ....

The facts as set forth in the petition and in the supporting affidavits allege that the symptoms of encephalopathy began "within hours" of Veronica's DPT vaccination. Petition at ¶ 6. In their affidavits, Mr. and Mrs. Spohn averred that "within hours of the vaccination, Veronica's whole head began to pulsate. The pulsation was so extreme that it could be noticed from across the room." P. Ex. 26 at ¶ 8; P. Ex. 27 at ¶ 8. Veronica's treating pediatrician, Dr. William Ashbaugh, refers to this pulsation as a bulging fontanel. P. Ex. 25 at 1. The question then becomes when did the bulging of Veronica's fontanel, presumably "the first symptom or manifestation of onset or of the significant aggravation of" her allegedly vaccine-related injury, occur. 42 U.S.C.A. § 300aa-16(a)(2). [FN4] If it occurred on July 17, petitioners fall outside of the limitations period provided in Section 16(a)(2). If it occurred on July 18, petitioners will have met the requirements of Section 16 (a)(2) and will be found to have made a timely filing of their petition.

In a statement filed by Dr. Ashbaugh, he asserts that

Veronica's development was normal until the period following her third DPT shot when she developed a bulging Fontanel and a high pitch cry. In my opinion, these symptoms could be compatible with an encephalitis following a DPT vaccination. Also according to the parents, Veronica experienced unusual staring spells after the DPT vaccine. This could also be encephalitis related.
P. Ex. 25 at 1.

Petitioners suggest in briefs filed in this matter that the bulging of Veronica's fontanel might have actually occurred in the early morning hours of July 18, 1992. Petitioners now contend they cannot remember whether the pulsating fontanel was actually first noticed on July 17 or the early morning hours of July 18. Petitioners' Opp'n at 5. Petitioners are seemingly suffering a convenient memory lapse on this point. Given the unequivocal nature of the statements made in the affidavits filed herein, and petitioners' current uncertainty about the date of onset of symptoms, petitioners simply cannot meet their burden of showing the first manifestation of Veronica's alleged Table injuries began on June 18, 1992. [FN5]

This determination, however, does not resolve this case. Also in issue is when the statutory period provided in § 300aa-16(a)(2) began and when that period ended.

3. The Limitations Period.

Section 300aa-16(a)(2) provides that "no petition may be filed for compensation under the Program for such injury after the expiration of 36 months *after* the date of the occurrence of the first symptom or manifestation of onset or of the significant aggravation of such injury." 42 U.S.C.A. § 300aa-16(a)(2) (emphasis added). [FN6]

**\*3** Petitioners argue that pursuant to Vaccine Rule 19(a), the actual counting of the statutory time period should not begin until the day *after* the accrual of the cause of action. Petitioners' Opp'n at 3-4. Vaccine Rule 19(a) provides in relevant part: "In computing any period of time, the day of the act, event, or default from which the designated period of time begins to run shall not be included." Vaccine Rule 19(a). This provision is nearly identical to the language in Rule 6(a) of the U.S. Court of Federal Claims, RCFC 6(a), and Rule 6(a) of the Federal Rules of Civil Procedure. Fed. R. Civ. P. 6(a). Petitioners argue that in accordance with Rule 19(a), they filed this claim in a timely fashion because it was filed three years and one day after the anniversary date of accrual. *Id* Respondent counters that the undersigned has no authority to enlarge the jurisdiction of this tribunal by one day through use of a court rule. Reply to Petitioners' Brief in Opposition ("Resp. Reply") at 4-5.

Even if the date of onset is excluded, however, and the statute of limitations' clock began ticking on July 18, 1992, the expiration of the statutory time frame occurred at midnight on July 17, 1995. A majority of courts addressing this issue have found that, applying the rule excluding the date of accrual, the statutory period still ends on the anniversary date of the event which triggers the beginning of the statute of limitations. [FN7]

I, too, would apply this interpretation. The onset of Veronica's alleged Table injury occurred on July 17, 1992. Excluding that date from the calculus, the statutory period commenced at 12:01 a.m. on July 18, 1992. The first year of the statute of limitations ended on July 17, 1993, at

Westlaw.

Not Reported in Fed.Cl.                                                                                                              Page 3
Not Reported in Fed.Cl., 1996 WL 532610 (Fed.Cl.)
**(Cite as: 1996 WL 532610 (Fed.Cl.))**

midnight. Following this analysis for the remaining two years, one reaches the conclusion that the statutory period expired at midnight on July 17, 1995. Petitioners filed this claim on July 18, 1995. Therefore, petitioners failed to file the claim within the statutory time period prescribed in § 300aa-16(a)(2).

4. The Doctrine of Equitable Tolling.

Although § 300aa-16(a)(2) bars this claim, petitioners argue that the statute of limitations should be equitably tolled to allow the claim to proceed. Petitioners' Opp'n at 6. Petitioners argue that they used due diligence in pursuing this claim, and they made every reasonable effort to obtain all information related to the claim. They allege, however, that Veronica's pediatrician failed to forward all of her medical records regarding Veronica's care. Petitioners' Opp'n at 7-10. In addition, petitioners argue that equitable tolling is appropriate in this case in light of the "generous compensation system" established by Congress. *Id.* at 10.

Respondent argues against the application of equitable tolling. First, respondent argues that § 300aa-16(a)(2) is a statute of repose against which equitable tolling cannot be applied. Second, respondent asserts the facts of this case do not fit within a recognized category of equitable tolling situations. Finally, respondent argues that petitioners failed to use due diligence in pursuing the claim. Resp. Reply at 6-10.

*4 Equitable tolling is a remedy that allows, in certain circumstances, a court to deem a filing to have been made in a timely manner when in fact it was not. [FN8] Equitable tolling applies to a broader array of situations than do the other equitable remedies. In *Irwin v. Department of Veterans Affairs*, 498 U.S. 89 (1990), the U.S. Supreme Court definitively stated that the doctrine of equitable tolling may be applied to statutes of limitations in suits against the federal government. *Id.* at 457. The issue, then, is whether § 300aa-16(a)(2) is a statute of repose.

(a) Statute of Repose v. Statute of Limitations.

The Supreme Court has held that statutes of repose are not subject to principles of equitable tolling because such

provisions clearly express congressional intent that the limitations period serve as a cutoff. *Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson*, 501 U.S. 350, 363 (1991). Respondent asserts that § 300aa-16(a)(2) is a statute of repose rather than a simple statute of limitations, thereby preventing the application of the doctrine of equitable tolling in this case. Resp. Reply at 6.

The limitations provision in *Lampf* states, "No action shall be maintained to enforce any liability created under this section, unless brought within one year after the discovery of the facts constituting the violation and within three years after such violation." *Id.* at 360 n.6. The Court held that the doctrine of equitable tolling was "fundamentally inconsistent with the 1-and-3- year structure" of the limitations provision. *Id.* at 363. The Court justified the holding as follows:

> The 1-year period, by its terms, begins after discovery of the facts constituting the violation, making tolling unnecessary. The 3-year limit is a period of repose inconsistent with tolling. One commentator explains: "[T]he inclusion of the three-year period can have no significance in this context other than to impose an outside limit."

*Id.* (quoting Bloomenthal, *The Statute of Limitations and Rule 10b-5 Claims: A Study in Judicial Lassitude,* 60 U. COLO. L. REV. 235, 288 (1989)).

As opposed to a typical statute of limitations, which begins to run upon accrual of a cause of action, the time limit for filing a claim under a statute of repose generally is not tied to the accrual. In *Alexander v. Beech Aircraft Corp.,* 952 F.2d 1215 (10th Cir. 1991), the court noted, "A statute of repose typically bars the right to bring an action after the lapse of a specified period, unrelated to the time when the claim accrued. . . . A statute of limitations generally bars the bringing of an action after the passage of a given period of time following the accrual of the claim." *Id.* at 1218 n.2; *see also Palmer v. Board of Educ.,* 46 F.3d 682, 685 (7th Cir. 1995).

In *Massard v. Secretary of HHS,* 25 Cl. Ct. 421, 425 (1992), Judge Harkins of the U.S. Court of Federal Claims analyzed the doctrine of equitable tolling as it applied to § 300aa-16(a)(1) [FN9]:

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in Fed.Cl.                                                      Page 4
Not Reported in Fed.Cl., 1996 WL 532610 (Fed.Cl.)
**(Cite as: 1996 WL 532610 (Fed.Cl.))**

**\*5** Statutes of limitation and repose may be distinguished both by their method of operation and their underlying purpose. Although the two terms have traditionally been used interchangeably, in recent years the term "statute of repose" has been used to distinguish ordinary statutes of limitation from those statutes which begin to run "at a time unrelated to the traditional accrual of the cause of action." F. McGovern, *The Variety, Policy and Constitutionality of Product Liability Statutes of Repose,* 30 Am. U.L. Rev. 579, 584 (1981). Statutes of repose run from an arbitrary event such as the date of the product's purchase, and do not use the date of injury as a factor in computing the limitation period. Statutes of limitation, on the other hand, generally "are much shorter time periods which run from the time the cause of action accrues."

\* \* \*

Statutes of limitation and repose may also be distinguished by their respective purposes. In ordinary statutes of limitation, any repose provided to defendants is merely incidental. The main purpose of such statutes is the prevention of stale claims, serving as "instruments of public policy and of court management, [which] do not confer upon defendants any right to be free from liability, although this may be their effect." ... Statutes of repose, in contrast, operate as a grant of immunity serving primarily "to relieve potential defendants from anxiety over liability for acts committed long ago."

*Id.* (citations omitted) (quoting *Menne v. Celotex Corp.,* 722 F. Supp. 662 (D. Kan. 1989)); *see also Glick v. United States,* 25 Cl. Ct. 435, 440 (1992) (discussing the applicability of equitable tolling under the six-year statute of limitations applicable to claims for military pensions). In *Massard,* the court held that § 300aa-16(a)(1) is a statute of repose. *Massard,* 25 Cl. Ct. at 426; *see also Young v. Secretary of HHS,* No. 90- 2508V, 1994 WL 879450 at \*6-\*7 (Fed. Cl. Spec. Mstr. Aug. 26, 1994) (also noting the distinction between statutes of repose and statutes of limitations and finding § 300aa-16(a)(1) a statute of repose).

In *Glarner v. United States Dep't of Veterans Admin.,* 30 F.3d 697 (6th Cir. 1994), the court, in reaching the conclusion that equitable tolling could be applied in a Federal Tort Claims Act case, noted that Congress can and has expressly negated the presumption of equitable tolling in some federal statutory limitations provisions but failed to do so in the FTCA. *Id.* at 701 (citing *Dean v. Veterans Admin. Regional Office,* 943 F.2d 667 (6th Cir. 1991), *vacated and remanded on other grounds,* 112 S. Ct. 1255 (1992)). Other courts have looked simply to the wording of a congressional enactment rather than the lack of an express congressional rejection of equitable tolling to see if the particular statutory language indicates that "Congress intended the limitations period therein to be absolute and not subject to tolling." *Raspberry v. Secretary of HHS,* 32 Fed. Cl. 777, 779 (1995) (citing *Lampf v. Gilbertson,* 501 U.S. 350 (1991)).

**\*6** Still other courts consider a broader range of factors. For instance, Judge Gibson of the U.S. Court of Federal Claims has used the following factors to determine whether a statute of limitations is also a statute of repose: "(1) whether the plain language of the statute indicates that it was intended as a cut-off, (2) whether the statutory time limit begins to run from the date of accrual or from some independent date; (3) the relative length of the statutory time period; (4) whether the time limit applies to the initial filing of an action or to some other, later phase of litigation; and (5) whether the legislative history provides any indication as to congressional intent." *Lombardo v. Secretary of HHS,* 34 Fed. Cl. 21, 26 (1995) (holding § 300aa-16(a)(1) to be a statute of repose); *see also Raspberry v. Secretary of HHS,* 32 Fed. Cl. at 780 (allowing equitable tolling to remedy a late-filed motion for review pursuant to § 300aa-12(e)(1), but distinguishing that situation from the filing of an initial petition, noting that "[f]actors that support strict application of the statute of limitations for the initial filing ... may not apply with equal force to the filing of" a motion for review).

Some courts have recognized that a limitations section that is separate and apart from the provisions granting jurisdiction, provides structural evidence of congressional intent that the limitations sections should not be viewed as an absolute statute of repose. In one recent decision, the U.S. District Court for the District of Columbia noted the following:

Where the jurisdictional grant is structurally separate

Not Reported in Fed.Cl.                                                                                Page 5
Not Reported in Fed.Cl., 1996 WL 532610 (Fed.Cl.)
**(Cite as: 1996 WL 532610 (Fed.Cl.))**

from the timely filing requirements of a statute, courts have generally found that timely filing is not jurisdictional in nature.... This is particularly true where the underlying legislative history is sparse and there is no evidence of contrary congressional intent.... A statute that grants jurisdiction and establishes the filing requirements in the same textual breath, creates filing requirements that are jurisdictional in nature.... However, absent "exceptionally emphatic" text to the contrary, ... structural separation between the jurisdictional grant and the filing requirements within a statutory regime indicates that Congress never intended a court's jurisdiction to turn on timely filing ....

*United States v. BCCI Holdings (Luxembourg), S.A.,* 916 F. Supp. 1276, 1283-84 (D.D.C. 1996) (citations omitted).

Although the 28 month provision [FN10] of § 300aa-16(a)(1) has been found to be a statute of repose, *see Massard, Lombardo,* and *Young,* that holding is not dispositive on the issue of whether § 300aa-16(a)(2) is a statute of limitations or a statute of repose. However, when viewed as a whole, factors outlined in the case law seem to indicate that the limitations provision found in § 300aa-16(a)(2) is simply a statute of limitations and not a statute of repose.

Although Congress clearly can rebut the presumption of equitable tolling through the express language of the statute, it did not do so in enacting § 300aa-16(a)(2). [FN11] In addition, the undersigned is unaware of any legislative history that would support the proposition that Congress intended the provision to be an absolute bar to a claim. Structurally, the statute provides support for the holding that § 300aa-16(a)(2) is not a repose. Although Congress clearly could have incorporated the limitations provision within the general jurisdictional provisions of §§ 300aa-11 and -12, it did not. The legislature chose to provide a separate section outlining the various limitations provisions in § 300aa-16. Moreover, unlike the statute at issue in *Lampf,* § 300aa-16(a)(2) does not provide a two-pronged limitations period. Whereas the Court in *Lampf* apparently drew upon the internal structure of the limitations provision at issue to find that the longer statutory period was a statute of repose, no such similar analysis can apply here because of the single

limitations period found in § 300aa-16(a)(2).

*7 Although the limitations period at issue here applies to an initial filing as opposed so some other period of limitations, numerous courts addressing other federal statutes of limitations have discussed the availability of equitable tolling to initial filings. *See, e.g., Justice v. United States,* 6 F.3d 1474 (11th Cir. 1993) (discussing equitable tolling under the Public Vessels and Suits in Admiralty Acts); *First Alabama Bank v. United States,* 981 F.2d 1226 (11th Cir. 1993) (discussing without deciding the issue of equitable tolling in federal taxation cases); *Muth v. United States,* 804 F. Supp. 838 (D. W. Va. 1992), *aff'd,* 1 F.3d 246 (4th Cir. 1993) (discussing equitable tolling in the FTCA); *Diltz v. United States,* 771 F. Supp. 95 (D. Del. 1991) (same). That § 300aa-16(a)(2) applies to initial filings is not a bar to the application of equitable tolling principles where appropriate. On the whole, the focus must be on congressional intent. Although the length of a statute of limitations may in some cases offer evidence of express legislative intent, I can find no such inference from the three-year limitations provision at issue here.

Moreover, and most importantly, the limitations period embodied in § 300aa-16(a)(2) begins to run from the accrual of the cause of action rather than some arbitrary date chosen by Congress, such as the 28-month provision of § 300aa-16(a)(1), and this fact favors the determination that § 300aa-16(a)(2) is not a statute of repose. *Lombardo v. Secretary of HHS,* 34 Fed. Cl. at 26; *Alexander v. Beech Aircraft Corp.,* 952 F.2d at 1218 n.2. I find, considering all of the above, that Congress did not intend for the 36-month provision found in § 300aa-16(a)(2) to act as a statute of repose. Therefore, equitable tolling may be available if the circumstances of the case permit.

(b) Circumstances Affording Equitable Tolling Relief.

The U.S. Supreme Court has noted that equitable tolling might be available when "the claimant has actively pursued his judicial remedies by filing" a claim that was defective on jurisdictional grounds but which was filed within the statutory period, or cases in which an opponent misled a plaintiff. *Irwin v. Secretary of Dep't of Veterans Affairs,* 498 U.S. at 96 & n.4 (citing *American Pipe & Construction Co.*

Not Reported in Fed.Cl.
Not Reported in Fed.Cl., 1996 WL 532610 (Fed.Cl.)
**(Cite as: 1996 WL 532610 (Fed.Cl.))**

Page 6

*v. Utah*, 414 U.S. 538 (1974)); *see, e.g., Jennings v. American Postal Workers Union*, 672 F.2d 712, 714 (8th Cir. 1982) (holding an agency that erroneously refused to file a claim based on a belief it lacked jurisdiction over the claim allowed the application of equitable tolling); *see also Wilson v. St. Louis-San Francisco Railway Co.*, 673 F.2d 1152, 1153 (10th Cir. 1982). Petitioners in the instant case failed to file a claim within the statutory period, and they have not alleged that respondent in any way misled them.

Some courts have held that the restrictions in *Irwin* represent the only circumstances on which a claim of equitable tolling may be based. [FN12] Other courts have found that *Irwin's* parameters for equitable tolling are not exclusive. For instance, the U.S. District Court for the District of Columbia has held that equitable tolling may be available when the claimant has received inadequate notice. *United States v. BCCI Holdings (Luxembourg), S.A.*, 916 F. Supp. 1276, 1284 (D.D.C. 1996) (citing *Freeman v. FDIC*, 56 F.3d 1394, 1405 (D.C. Cir. 1995)). The U.S. Court of Appeals for the Ninth Circuit has likewise read *Irwin* more broadly. That court has noted:

*8 There are other situations in which the courts have indicated that it may be proper for courts to exercise their equitable powers. In *Catawba Indian Tribe of South Carolina v. United States*, 982 F.2d 1564 (Fed. Cir.), *cert denied*, 509 U.S. 904, 113 S.Ct. 2995, 125 L.Ed.2d 689 (1993), the court stated that even where there is no applicable express tolling provision, 'courts may when circumstances require invoke the concept of tolling as an equitable matter.... A court in an appropriate case may temper the application of the bar in exercise of its equitable powers.' *Id.* at 1571 & n. 10.

*Capital Tracing, Inc. v. United States*, 63 F.3d 859, 862 (9th Cir. 1995). The court stated that factors such as "the lack of clear precedent in the circuit regarding the issue" and "the absence of prejudice to the defendant" may be considered in determining whether equitable tolling is appropriate. *Id.* There, the court allowed equitable tolling based on the lack of clear precedent concerning the underlying legal issue and the lack of a showing of prejudice to the defendant/government. *Id.* at 863. The court noted that the plaintiff "exercised its rights at what it thought was the earliest opportunity." *Id.*

The U.S. Court of Appeals for the District of Columbia has noted that "a wide array of equitable principles can support the tolling of a statutory deadline." *Bull S.A. v. Comer*, 55 F.3d 678, 681 (D.C. Cir. 1995). Other courts have stated that equitable tolling is allowable "if, despite all due diligence, a plaintiff is unable to obtain vital information bearing on the existence of the claim." *Supermail Cargo, Inc. v. U.S.*, 68 F.3d 1204 (9th Cir. 1995) (citing *Stevens v. Secretary of HHS*, 31 Fed. Cl. 12, 23 (1994)); *Johnson v. Runyon*, 858 F. Supp. 747, 752 (D. Ill. 1994), *reversed on other grounds*, 47 F.3d 911 (7th Cir. 1995); *Glick v. United States*, 25 Cl. Ct. 435, 440 (1992). "Equitable tolling relates to the situation where a cause of action has accrued but the plaintiff cannot obtain information necessary to decide whether the injury is due to wrongdoing and, if so, to wrongdoing by the defendant." *Massard v. Secretary of HHS*, 25 Cl. Ct. 421, 425 (1992).

The U.S. Court of Federal Claims has stated that *Irwin* "permit[s] a court to forgive a late filing where compelling circumstances indicate that such a result would be equitable," as long as the neglect was not a "garden variety claim of excusable neglect." *Lombardo v. Secretary of HHS*, 34 Fed. Cl. 21, 25 (1995) (citing *Irwin*, 498 U.S. 89, 96); *see also Coleman v. Guy F. Atkinson, Co., Inc. NV*, 887 F. Supp. 49, 53 (D.R.I. 1995) (allowing equitable tolling of all statutes of limitations applicable against clients of a law firm when the law firm's office burned to the ground).

The Sixth Circuit has stated:
The factors that this court considers in deciding whether to apply the doctrine of equitable tolling are (1) lack of actual notice of the filing requirement; (2) lack of constructive knowledge of the filing requirement; (3) diligence in pursuing one's rights; (4) absence of prejudice to the defendant; and (5) a plaintiff's reasonableness in remaining ignorant of the notice requirement.
*9 *Glarner v. United States Dep't of Veterans Admin.*, 30 F.3d 697, 699- 702 (6th Cir. 1994) (citing *Andrews v. Orr*, 851 F.2d 146, 151 (6th Cir. 1988)). [FN13]

5. Due Diligence.

The application of equitable tolling must be determined on a case-by-case basis. *Scholar v. Pacific Bell*, 963 F.2d 264

Not Reported in Fed.Cl.                                                                      Page 7
Not Reported in Fed.Cl., 1996 WL 532610 (Fed.Cl.)
**(Cite as: 1996 WL 532610 (Fed.Cl.))**

(9th Cir.), *cert. denied,* 113 S. Ct. 196 (1992). The Supreme Court has stated that the principles of equitable tolling do not extend to what is at best a garden variety claim of excusable neglect, and the doctrine should be used only "sparingly." *Irwin,* 498 U.S. 89, 96. "We have generally been much less forgiving in receiving late filings where the claimant failed to exercise due diligence in preserving his legal rights." *Id.* (citing *Baldwin County Welcome Center v. Brown,* 466 U.S. 147, 151 (1984)); *see, e.g., Citicorp Person-to-Person Financial Corp. v. Brazell,* 658 F.2d 232, 235 (4th Cir. 1981) (holding that no basis for equitable tolling existed when "[e]ven though there may be some explanation of [[[[[plaintiff's] mistake, ... it was her mistake. It was not induced by the [[[[[defendant] ...."). The final issue I must address here is whether petitioners used due diligence in pursuing this claim.

The question of what constitutes due diligence is indeed a slippery subject. Courts rarely discuss the meaning of the term. Rather, the facts of each case drive courts' determinations. [FN14] In a case somewhat similar to this one, the U.S. Court of Federal Claims rejected a petitioners' request for the application of equitable tolling on the 30-day time period for a motion for review. *Her by Her v. Secretary of HHS,* 33 Fed. Cl. 542, 545 (1995). The court held petitioners failed to act diligently in pursuing the claim based on the fact that they waited until less than 12 hours remained before the expiration of the statutory deadline before mailing the motion for review via same-day air delivery service. *Id.* The court found petitioners' actions "demonstrate a failure to exercise an appropriate level of concern regarding the impending statutory filing deadline." *Id.* "This court will not invoke such relief to permit petitioners to avoid the reasonably foreseeable consequences of their risk-laden actions." *Id.* at 546; *but see Raspberry,* 32 Fed. Cl. at 782 (noting the efforts taken by petitioner to make sure the court received the filing on time, including choosing an established carrier that guaranteed overnight delivery). The facts of the case at bar, however, do not compare with those in *Her.* In that case, the petitioner was aware of the deadline and failed to file the motion for review in a timely manner. Petitioners here did not actually know that they were relying on the wrong accrual date of July 19, 1992, when they filed this petition.

The question remains, however, of whether they *should have known* of the proper accrual date. [FN15]

I must decide whether petitioners herein acted with *objective reasonableness* in pursuing this claim and in waiting until July 18, 1995, to file this claim. [FN16] I must discern what actions a reasonably prudent person would have taken after exercising due diligence. *Johnson v. Runyon,* 858 F. Supp. at 752 (noting that "reasonably prudent person" standard must be applied).

**\*10** In an affidavit filed in this matter, petitioners' counsel states that he never received all of the documentation from Dr. Sekaran's office, although he tried repeatedly to acquire all of the medical records. Petitioners' Brief in Opposition to Rule 4 Report Dismissal Request ("Petitioners' Opp'n"), Ex. 1 at ¶¶ 6-9. Although he had received the contemporaneous office notes indicating a vaccination date of July 17, 1992, he relied instead on the immunization records in calculating the 36-month statutory period under the Act. *Id.* Petitioners argue, in essence, that they should not be held accountable for their failure to find the notation in the medical records providing the correct vaccination date:

> Respondent cites the failure of Petitioners' counsel to uncover the words "DPT, Hib #3" on one of the pages of Dr. Sekaran's *office* notes, dated July 17, 1992, as proof of counsel's lack of due diligence.... Respondent must admit the blatant inaccuracy of her statement that these three words, hidden in a hodgepodge of obscure notations, provides more detailed and clear documentation of Veronica's third vaccination than the three vaccine records cited above.....

Reply to Respondent's Reply Brief in Opposition to Rule 4 Report Dismissal Request at 9. Petitioners accurately note that Dr. Sekaran failed to provide all of her office documentation regarding this claim when requested by petitioners' counsel. *Id.* This additional documentation would likely have made the date inconsistency more clear. However, this argument obscures the true focus of inquiry. Petitioners' counsel should have reviewed the medical documentation before filing the petition to ascertain the validity of the claim presented. Petitioners filed documentation with the petition that included the correct vaccination date of July 17, 1992. This documentation, the

A-58

Not Reported in Fed.Cl.                                                                    Page 8
Not Reported in Fed.Cl., 1996 WL 532610 (Fed.Cl.)
**(Cite as: 1996 WL 532610 (Fed.Cl.))**

pediatrician's contemporaneous office notes, rather than being merely a "hodgepodge of obscure notations" as petitioners suggest, contains the *most pertinent medical record information relevant to this claim:* What was the health of the child on the date of vaccination and do the records suggest that Veronica sustained any untoward reaction to the vaccination in question? Any inquiry into the reasonableness of a claim would necessarily lead straight to the pediatrician's contemporaneous office records to answer these questions. Petitioners' failure to act diligently in reviewing the medical records constitutes little more than "a garden variety claim of excusable neglect." *Irwin,* 498 U.S. 89, 96. Under the circumstances, I find petitioners failed to exercise due diligence in pursuing their claim. The doctrine of equitable tolling is thus unavailing to them.

### C. CONCLUSION

After considering the entire record in this matter, I find that petitioners filed this claim outside of the statute of limitations provided in § 300aa-16(a)(2), and their failure to use due diligence in pursuing the claim makes the use of equitable tolling inapplicable. Therefore, this claim is hereby DISMISSED. In the absence of a motion for review filed pursuant to RUSCFC Appendix J, the Clerk of the Court is directed to enter judgment in accordance with this decision.

**\*11** A copy of this decision was faxed to the parties.

IT IS SO ORDERED.

> FN1. The National Vaccine Injury Compensation Program comprises Part 2 of the National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99- 660, 100 Stat. 3755, codified as amended at 42 U.S.C.A. §§ 300aa-10 to - 34 (West 1991 & Supp. 1996). References in this decision are to the relevant subsection of 42 U.S.C.A. § 300aa.

> FN2. Because petitioners filed this claim after the March 10, 1995, effective date of the final regulation amending the Vaccine Act, this claim is governed by the new regulations. 42 C.F.R. § 100.3(e) (1995). The Vaccine Injury Table pertaining to DPT vaccinations, as revised by the

regulations, only includes Table injuries of encephalopathy and anaphylaxis, whereas the Table applicable to cases filed before March 10, 1995, included the injury of residual seizure disorder as well. 42 U.S.C.A. § 300aa-14(a) (West Supp. 1996).

> FN3. Dr. Sekaran provided a chart showing the manufacturer, lot number, and date of Veronica's vaccination during her deposition. This chart shows a vaccination date of July 17, 1992. In addition, Dr. Sekaran provided a financial history that showed charges for Veronica's vaccinations, including a DPT administered to her on July 17, 1992.

> FN4. Petitioners argue that the provisions of § 300aa-16(a)(2) allow a claim to accrue at the occurrence of "the first symptom" or "the manifestation of onset" or "the significant aggravation of such injury," thereby providing *three* potential accrual dates. Petitioners' Opp'n at 5-6. Petitioners' contention in this regard is illogical and contrary to the plain meaning of the statute.

Statutory construction begins with the statute's language, with the assumption that the ordinary meaning of the provision accurately reflects congressional intent. "Where a statute's language is unambiguous, its plain meaning is conclusive, and judicial inquiry halts at that point ...." *Amendola v. Secretary of HHS,* No. 90-766V (Order of Dismissal March 14, 1991), *sustained,* 23 Cl. Ct. 621 (1991), *aff'd,* 989 F.2d 1180 (Fed. Cir. 1993). A statute must be interpreted as a whole, and every effort should be made to give meaning and effect to the entire enactment. *Beecham v. United States,* 114 S. Ct. 1669, 1671 (1994) (citing *King v. St. Vincent's Hospital,* 112 S. Ct. 570 (1991); *Massachusetts v. Morash,* 490 U.S. 107 (1989); *Shell Oil Co. v. Iowa Dept. of Revenue,* 488 U.S. 19 (1988)). The emphasis should be "on the language in the totality of the enactment and the felt reasonableness of the chosen construction." Felix Frankfurter, *Some Reflections on the Reading*

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in Fed.Cl.                                                                                              Page 9
Not Reported in Fed.Cl., 1996 WL 532610 (Fed.Cl.)
**(Cite as: 1996 WL 532610 (Fed.Cl.))**

*of Statutes,* 47 COLUMBIA L. REV. 527, 532 (1947). "Violence must not be done to the words chose by the legislature." *Id.* at 543.

Petitioners interpret "first symptom" and "manifestation of onset" as allowing two separate accrual dates. (Petitioners herein have not argued that Veronica suffered a significant aggravation of a pre-existing injury.) In addressing nearly identical statutory language found in § 300aa-14(a), Special Master Abell held that the words "first symptom" and "manifestation" are modifiers of the word "onset." *Matkovich v. Secretary of HHS,* No. 90-1676V, 1996 WL 251403 at *4 (Fed. Cl. Spec. Mstr. Apr. 29, 1996). This interpretation appears to have merit. Regardless of the syntactical relationship of the various phrases and how the sentences are parsed, it is clear that § 300aa-16(a)(2) provides for a single event to trigger the statute of limitations on a vaccine claim. The *first indicia* of the injury following vaccination in effect starts the limitations clock. Events that occur after the initial symptom of the injury have no impact on the limitations period that has already begun. Petitioners' suggestion that an injured person might first show a "manifestation of onset" of an injury and then later show "symptoms" of that injury, with either event providing a new statute of limitations period on the Program claim simply does not comport with the plain language of the statute. *See, e.g., Shalala v. Whitecotton,* 115 S. Ct. 1477, 1480 (1995) (noting that an allegedly vaccine-related injury can have only one onset). The language Congress enacted in § 300aa-16(a)(2) clearly allows for only one accrual date for each Table injury.

FN5. As for the anaphylaxis claim, the Vaccine Injury Table only allows a time period of four hours after vaccination in which the event can occur and still fall within the revised Table time frame. 42 C.F.R. § 100.3(a) (1995). Based on the allegations pled in the petition, this cause of action is clearly time barred by § 300aa-16(a)(2).

FN6. Of note, however, is the fact that the three limitations periods provided in § 300aa-16(a) use a variety of words expressing when the statutory period begins. Section 16(a)(1) provides that "no petition may be filed ... *after* the expiration of 28 months *after* the effective date of this subpart [October 1, 1988] and no petition may be filed if the first symptom or manifestation of onset or of the significant aggravation of such injury occurred more than 36 months *after* the date of administration of the vaccine." § 300aa-16(a)(1). Section 16(a)(2) provides that "no petition may be filed ... *after* the expiration of 36 months *after* the date of ... onset ...." § 300aa-16(a)(2) (emphasis added). Section 16(a)(3), however, provides that "no petition may be filed ... *after* the expiration of 24 months *from* the date of the death and no such petition may be filed more than 48 months *after* the date of the ... onset ...." § 300aa-16(a)(3) (emphasis added). It is impossible to know whether Congress intentionally employed different words in the three limitations provisions or whether inartful drafting produced the anomalous results.

FN7. In *Vernell v. United States Postal Service,* 819 F.2d 108, 111 (5th Cir. 1987), the U.S. Court of Appeals for the Fifth Circuit held the six-month statutory period under the Federal Tort Claims Act begins on the day *after* mailing of a denial notice, applying Rule 6(a) to the statutory period, and ends on the day *before* the same calendar date six months later. In *Vernell,* the Postal Service mailed the letter to the claimant on January 12, 1984, and the court held the claim time barred because service of the complaint was not completed until July 13, 1984, one day past the statutory time period. *Id.* at 112. In *Monkelis v. Mobay Chemical,* 827 F.2d 937, 938 (3d Cir. 1987), the U.S. Court of Appeals for the Third Circuit rejected the argument that a statute of limitations expired the day after the anniversary date of the event that started the limitations period. Applying Federal Rule 6(a) to the relevant statute of limitations, the court held that the last day of a six-year statute of limitations

Not Reported in Fed.Cl.                                                                   Page 10
Not Reported in Fed.Cl., 1996 WL 532610 (Fed.Cl.)
(Cite as: 1996 WL 532610 (Fed.Cl.))

was April 11, 1986, when the event that gave rise to the cause of action occurred on April 11, 1980. *Id.; see also Maloy v. Phillips*, 64 F.3d 607, 608 (11th Cir. 1995) (holding plaintiffs timely filed on anniversary date of accrual date when Rule 6(a) applied); *Lawson v. Conyers Chrysler, Plymouth, and Dodge Trucks, Inc.*, 600 F.2d 465, 466 (5th Cir. 1979) (same); *Tribue v. United States*, 826 F.2d 633, 635 (5th Cir. 1987) (same). State courts applying a state civil procedure rule analogous to Federal Rule 6(a) have reached the same result. *See, e.g., Palmer v. Borg-Warner Corp.*, 818 P.2d 632, 634-35 (Alaska 1990) (concluding claim filed after the anniversary date of the event was not timely when the first day of the time period was excluded according to state rule identical to federal rule); *Simon v. Wisconsin Marine, Inc.*, 947 F.2d 446, 446-48 (10th Cir. 1991) (applying Colorado law and allowing claim to proceed when filed on the anniversary date, excluding the accrual date by court rule). Even courts that have rejected the use of Federal Rule 6(a) in federal statutes of limitations have followed this time calculation method. *See Mattson v. U.S. West Communications, Inc.*, 967 F.2d 259, 262 (8th Cir. 1992) (noting that "if the violation occurred on November 27, 1989, [plaintiff] had 365 days beginning on that date to file her complaint. This period ended on November 26, 1990, 365 days later.") (citing *Rust v. Quality Car Corral, Inc.*, 614 F.2d 1118 (6th Cir. 1980)).

FN8. Equitable tolling differs from waiver of a statute of limitations by a court and equitable estoppel of a limitations period. Because time limitations on the filing of actions are an integral part of the government's waiver of sovereign immunity, courts generally refuse to *waive* limitations periods "because to do so would be to improperly and illicitly expand our jurisdiction." *Lombardo v. Secretary of HHS*, 34 Fed. Cl. 21, 24 n.3 (1995) (emphasis added) (citing *United States v. Mottaz*, 476 U.S. 834, 841 (1986); *Widdoss v. Secretary of HHS*, 989 F.2d 1170, 1177-78 (Fed.

Cir.), *cert denied, Widdoss v. Shalala*, 114 S. Ct. 381 (1993)); *see also Gilbert v. Secretary of HHS*, 51 F.3d 254, 257 (Fed. Cir. 1995) ("The Vaccine Act gives the Court of Federal Claims no authority to waive the time limits Congress provided for filing an election.").

Equitable estoppel involves the situation in which the defendant actively and intentionally misleads or counsels an injured person not to sue or investigate a claim. *Goodhand v. United States*, 40 F.3d 209, 213-14 (7th Cir. 1994). "[E]quitable estoppel, [hinges] on defendants' representations that prevent plaintiffs from suing before the statute of limitations has run; defendants are then estopped from pleading a statute of limitations defense." 4 Charles Alan Wright & Arthur R. Miller, FEDERAL PRACTICE AND PROCEDURE § 1056 (Supp. 1996). Courts generally allow equitable estoppel only in the presence of defendant misconduct and generally do not allow its use against the federal government. *Heckler v. Community Health Services of Crawford County, Inc.*, 467 U.S. 51, 67 (1984) (refusing to apply equitable estoppel against the U.S. government); *Schweiker v. Hansen*, 450 U.S. 785, 790 (1981) (same); *Keenan v. Allen*, 889 F. Supp. 1320, 1372 (D. Wash. 1995); *Her by Her v. Secretary of HHS*, 33 Fed. Cl. 542, 543-44 (1995).

FN9. Section 300aa-16(a)(1) states:
In the case of--
(1) a vaccine set forth in the Vaccine Injury Table which is administered before the effective date of this subpart, if a vaccine-related injury or death occurred as a result of the administration of such vaccine, no petition may be filed for compensation under the Program for such injury or death after the expiration of 28 months after the effective date of this subpart [October 1, 1988] and no such petition may be filed if the first symptom or manifestation of onset or of the significant aggravation of such injury occurred more than 36 months after the date of administration of the vaccine

....

Not Reported in Fed.Cl.                                                                      Page 11
Not Reported in Fed.Cl., 1996 WL 532610 (Fed.Cl.)
**(Cite as: 1996 WL 532610 (Fed.Cl.))**

42 U.S.C.A. § 300aa-16(a)(1) (West Supp. 1996).

FN10. The undersigned is unaware of any decision discussing the effect of the 36-month provision found in § 300aa-16(a)(1). Apparently, the Congress inserted the provision to "restrict[] filing of such petitions to those cases in which the first symptom or manifestation of injury occurred within 3 years of the administration of the vaccine." 136 Cong. Rec. H9726-02, 9729 (Oct. 15, 1990) (comments of Congressman Waxman).

FN11. *But cf* *United States v. Dalm*, 494 U.S. 596, 610 (1990) (noting that express statutory language providing the situations in which equity may be used rebuts the presumption that other forms of equity are available).

FN12. *Wilson v. Secretary of the Dep't of Veterans Affairs*, 65 F.3d 402, 404-05 (5th Cir. 1995) (rejecting equitable tolling on claim that failure to file claim timely was due to overseas postal delays); *Lambert v. United States*, 44 F.3d 296, 298 (5th Cir. 1995) (limiting equitable tolling to situations mentioned in *Irwin*); *Carpenter v. Department of Transp.*, 13 F.3d 313, 317 (9th Cir. 1994) (noting that the plaintiff "did not file any pleading during the statutory period and was in no way tricked or induced into letting the statutory period pass. The doctrine of equitable tolling, therefore, should not be applied."); *Raziano v. United States*, 999 F.2d 1539, 1541 (11th Cir. 1993) (noting statement in *Irwin* "stressed the limited availability of equitable tolling."); *Mincey v. United States Postal Service*, 879 F. Supp. 567, 573 (D.S.C. 1995); *Kusek v. Family Circle, Inc.*, 894 F. Supp. 522, 530-31 (D. Mass. 1995); *Stevens v. Secretary of HHS*, 31 Fed. Cl. 12, 23 (1994) (noting historical basis for limited view of equitable tolling); *Farris v. United States*, 877 F. Supp. 1549, 1552 (D. Fla. 1994).

FN13. In *Glarner*, the court allowed equitable tolling because the federal agency failed to perform the mandatory duty of supplying the plaintiff with

the necessary form, and the plaintiff lacked actual or constructive notice of the default. *Id.* at 701-02; *see also* *Gilbert v. Secretary of HHS*, 51 F.3d 254, 257 (Fed. Cir. 1995) (suggesting facts and circumstances of given case must be considered); *Medellin v. Shalala*, 23 F.3d 199, 204 (8th Cir. 1994) (noting that gross, but good-faith, error on the part of a claimant should justify extraordinary remedy of equitable tolling); *Raspberry v. Secretary of HHS*, 32 Fed. Cl. 777, 782 (1995) (holding plaintiff diligently pursued her remedies when she drafted a comprehensive motion for review within 28 days and secured a guaranteed overnight delivery service, which failed to timely delivery the package); *but see Wysocki v. Secretary of HHS*, No. 91-167V, slip op. at 7 (Fed. Cl. June 20, 1996) (holding 42 U.S.C. § 300aa-12(e) is a jurisdictional bar on the court's authority to act).

FN14. *See, e.g.*, *Juice Farms, Inc. v. United States*, 68 F.3d 1344, 1346 (Fed. Cir. 1995) (rejecting equitable tolling where plaintiff claimed it did not receive notice of agency action, but agency posted notice of its action and plaintiff was under duty to check for postings. Plaintiff's lack of diligence found to be the cause of the late complaint); *United States v. BCCI Holdings (Luxembourg), S.A.*, 916 F. Supp. 1276, 1284 (D.D.C. 1996) (holding that equitable tolling may be available when the claimant has received inadequate notice) (citing *Freeman v. FDIC*, 56 F.3d 1394, 1405 (D.C. Cir. 1995)). "Whether a claimant has acted with due diligence is a 'fact-specific judgment in each case.'" *United States v. BCCI Holdings (Luxembourg), S.A.*, 916 F. Supp. at 1284 (quoting *Holni v. United States*, 782 F.2d 227, 250 (D.C. Cir. 1986)).

FN15. *See, e.g.*, *Farris v. United States*, 877 F. Supp. 1549, 1553 (D. Fla. 1994) (noting that "[t]he interests of justice side with the defendant when the plaintiff does not file [suit] in a timely fashion despite knowing or *being in a position reasonably to know* that the limitations period is running, and, or course, when [the plaintiff] fails to act with due

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in Fed.Cl.                                                                                               Page 12
Not Reported in Fed.Cl., 1996 WL 532610 (Fed.Cl.)
**(Cite as: 1996 WL 532610 (Fed.Cl.))**

diligence.'") (emphasis added) (quoting *Justice v. United States,* 6 F.3d at 1479). "Courts acting in their equitable capacity should toll statutes of limitations 'only upon finding an inequitable event that prevented plaintiff's timely action.'" *Id* at 1552-53 (citing *Justice v. United States,* 6 F.3d at 1479 (quoting David D. Doran, Comment, *Equitable Tolling of Statutory Benefit Time Limitations: A Congressional Intent Analysis,* 64 WASH. L. REV. 681, 682 (1989)).

FN16. *Pertnoy v. Secretary of HHS,* No. 95-218V, 1995 WL 579827 (Fed. Cl. Spec. Mstr. Sept. 18, 1995) (noting appropriate standard is objective rather than subjective reasonableness) (citing *Cragin v. United States,* 684 F. Supp. 746, 754 (D. Me. 1988), *aff'd,* 873 F.2d 1433 (1st Cir. 1989)); *see also Dodds v. Cigna Securities, Inc.,* 12 F.3d 346, 350 (2d Cir. 1993), *cert. denied,* 114 S. Ct. 1401 (1994) ( "Equitable tolling will stay the running of the statute of limitations only so long as the plaintiff has 'exercised reasonable care and diligence ....").

Not Reported in Fed.Cl., 1996 WL 532610 (Fed.Cl.)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.