UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| FACTORY MUTUAL INSURANCE COMPANY a/k/a : | |
| FM GLOBAL a/s/o CATALOG RESOURCES, INC. : | NO.: 05-96 JJF |
| d/b/a CLIENTLOGIC A SUBSIDIARY OF : | |
| CLIENTLOGIC OPERATIONS CORPORATION : | |
| AND THE HARTFORD a/s/o VIVRE, INC. : | |
|                               Plaintiffs, : | |
|    v. : | |
| : | |
| EAST COAST ERECTORS : | |
|    and : | |
| LIGHTHOUSE CONSTRUCTION, INC. : | |
|    and : | |
| BECKER MORGAN GROUP, INC. : | |
|    and : | |
| O'DONNELL, NACCARATO & MACINTOSH, INC. : | |
|                               Defendants. : | |

**ANSWERING BRIEF IN SUPPORT OF PLAINTIFFS' OPPOSITION TO DEFENDANT
EAST COAST ERECTORS, INC.'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

      COMES NOW plaintiff, Factory Mutual Insurance Company (also known as FM Global and referred to hereinafter as "FM") file this Answering Brief in Support of Plaintiff's Opposition to East Coast Erectors, Inc.'s (hereinafter "ECE") Motion for Partial Summary Judgment based upon the statute of repose.

Respectfully submitted,

| | |
|---|---|
| **McCullough & McKenty, P.A.** | **Rogut McCarthy Troy LLC** |
| /s/ Bruce W. McCullough | _____ |
| Bruce W. McCullough, Esquire | Geoffrey W. Veith, Esquire |
| Delaware ID 3112 | One First Avenue – Suite 410 |
| 1225 N. King Street, Suite 1100 | Conshohocken, PA 19428 |
| P.O. Box 397 | 610-644-5900 |
| Wilmington, DE 19899-0397 | |
| 302-655-6749 | |

Dated: August 31, 2005

1

## TABLE OF CONTENTS

|   | PAGE |
|---|---|
| TABLE OF CITATIONS | 3 |
| STATEMENT OF NATURE AND STAGE OF PROCEEDING | 4 |
| SUMMARY OF ARGUMENTS | 5 |
| COUNTER STATEMENT OF FACTS | 7 |
| STANDARD FOR SUMMARY JUDGMENT AND ARGUMENT | 11 |
| CONCLUSION | 13 |

## TABLE OF CITATIONS

**FEDERAL CASES**  PAGE

Celotex Corp. v. Catrett, 477 U.S. 317, 106 S.Ct. 2548 (1986)   11

**DELAWARE CASES**

McConaghie v. Wakefern Food Corp., 2004 Del.Super. LEXIS 165 (2004)   11, 12

**STATUTES AND RULES**

10 Del. C. § 8127   11

## STATEMENT OF NATURE AND STAGE OF PROCEEDING

Plaintiffs agree with the statement offered by FM for the purpose of this Motion.

## SUMMARY OF ARGUMENTS

ECE was part of a design/build team for a building constructed in 1999 that was attached to a building ECE constructed in 1995. The 1995 building collapsed during a February 2003 snowfall due to design/construction errors that occurred in 1999. As part of the 1999 project, ECE was contracted to evaluate the 1995 building for its ability to support wind drifted snow loads created by the taller 1999 building. ECE failed to reveal to the 1999 design team that critical flange braces shown on the 1995 plans, used to evaluate the 1999 project, were never installed. Compounding the problem, ECE represented the drawings for the 1995 building as "As Built Drawings" during the design phase of the 1999 project. Further compounding the problem, ECE never secured, as required, a construction drawing sealed by a licensed engineer for structural modifications intended to re-enforce the 1995 building. The unsealed sketch used to modify the 1995 building in 1999 was actually created by an unlicensed engineer who failed the Professional Engineer licensing exam on three occasions.

ECE is attempting to shield itself from liability resulting from its omission of flange braces in 1995 by raising Delaware's six year statute of repose. However, ECE's reliance on the statute is improper where it has performed substantial work on the premises after original construction and within six years of Plaintiffs' actions. <u>ECE's liability exposure was restored in 1999 when it failed, among other things, to: 1) disclose the omission of flange braces shown on sealed construction plans to its structural engineer; 2) represented the 1995 construction plans as "As Built Drawings;" and 3) failed to secure construction drawings sealed by a licensed professional engineer as required by the applicable building code</u>. These acts/omissions in 1999 caused the collapse of the 1995 building in 2003. The statute of repose is not available where a contractor re-enters the premises following original construction and performs new work.

5

Particularly when the work includes structurally evaluating and modifying the original work due to a change in conditions brought about by the new work.

**COUNTER-STATEMENT OF FACTS**

**1.      Request to Strike Unsubstantiated/Incorrect Statements**

As an initial matter, the Motion is premised on several statements that lack support in the record and need to be corrected.

First, plaintiff Del Homes Catalog Group, LLC ("Del Homes") did not plan or develop the addition of the new steel building adjacent to the 1995 building. On June 18, 1998 the tenant of the 1995 building, Catalog Resources, Inc. ("Catalog Resources"), faxed two expansion sketch proposals for the 1995 building to Greg Moore, AIA of defendant Becker Morgan Group, Inc. ("Becker Morgan"). (Exhibit A, Moore Dep. Ex. 14, Appendix B1-B3). According to Robert MacLeish of defendant Lighthouse Construction, Inc. ("Lighthouse"), Becker Morgan was the civil engineer and architect for the for the 1999 project. (Exhibit B, MacLeish Dep. pp. 70-83, Appendix B4-B19). Becker Morgan, not Del Homes, planned and developed the 1999 building. Lighthouse, as the general contractor, subsequently retained ECE to design, supply and install the structural steel for the 1999 building using Becker Morgan's drawings. (Exhibit C, MacLeish Dep. Ex. 25 and 26, Appendix B20-B24; Exhibit D, MacLeish Dep. pp. 197-202; Appendix B25-B32). ECE's services included the evaluation and reinforcement of bar joists in the 1995 building. (Id.).

Plaintiffs also believe the expert opinion of Mr. Timbie regarding the cause of the collapse is oversimplified by ECE's Motion. Mr. Timbie identified several causes of the collapse, not simply the failure of "two bar joists" as stated in ECE's Statement of Facts. Mr. Timbie identified a multitude of faults resulting in the 1995 building partially collapsing, such as: 1) placing roof drains in the drift area of the 1995 building; 2) flawed engineering calculations; 3) failing to procure construction plans sealed by a licensed professional engineer; 4) unaccounted for dead load associated with suspending drainage pipes from joists; 5) failing to

7

identify erection errors in the 1995 building; 6) not strengthening all areas of the 1995 building subject to drifts; and 7) absence of site visits during the design phase of 1999 project. (Exhibit E, Timbie Expert Report pp. 1-15; Appendix B33-B48).

### 2. Plaintiffs' Allegations of Liability Producing Conduct

Plaintiffs have alleged that the defendants collectively failed to properly design and construct a 1999 warehouse expansion project at 97 Commerce Way in Dover, Delaware. (Exhibit F, Amended Complaint of Millers Capital, Appendix B49-B57). The project resulted in a new building being constructed in 1999 adjacent to an existing building constructed in 1995. (ECE's Appendix at A31-A34). The 1995 building had a roof height approximately 5' lower than the 1999 building and, as a result, was susceptible to wind drifted rooftop snow loads at the offset, also known as a Roof Step. (ECE's Appendix A39-A43). Plaintiffs have specifically alleged that in the course of the 1999 project, the defendants failed, among other things, to: a) properly engineer or design for the increased snow load on the 1995 building; b) design or engineer the 1999 building in a manner that did not compromise the 1995 building; c) properly inspect the 1995 building for adequate structural stability against drifted snow loads; d) redesign and/or re-engineer the 1995 building to accommodate the drifted snow load; e) warn of the inherent deficiencies with interfacing the 1999 and 1995 buildings; f) provide alternative design and/or engineering for the additional load; and g) identify known defects that compromised the structural integrity of the 1995 building. (Exhibit F, Complaint of Factory Mutual, Appendix B49-B57).

Discovery in this matter has clearly established that Lighthouse agreed to design and build the 1999 project, which included the need to evaluate the 1995 building to support drifted snow loads. (Exhibit C, MacLeish Dep. Ex. 25 and 26, Appendix B20-B24; Exhibit D, MacLeish

Dep. pp. 197-202; Appendix B25-B32).  Lighthouse, as the general contractor, hired Becker Morgan as the civil engineer and project architect.  Lighthouse also contracted ECE to design, supply and install the 1999 building.  (Id.).  ECE was also contracted to reinforce the 1995 building in anticipation of the drift loads.  (Id.).  ECE, in turn, contracted with O'Donnell, Nacarrato & MacIntosh, Inc. ("ONM") to provide structural engineering services.  (ECE's Appendix A7-A16).

The subject of this Motion is ECE's desire to avoid any liability claims related to flange braces not being installed on the 1995 building at the time it was originally constructed.  ECE bases its Motion on its belief that the omission of the braces in 1995 places any claim related to such omission well outside the statute of repose.  ECE's principal, Michael Williams, testified that the flange braces were knowingly not installed based upon direction he allegedly received from Lighthouse during the construction of the 1995 building.  (Exhibit G, Williams Dep. pp. 111-114, Appendix B58-B63).  Mr. Timbie, plaintiffs' structural engineering expert, believes that the missing flange braces may have allowed the initial collapse to spread and involve additional portions of the 1995 building.  (ECE's Appendix A99-A100).

It is essential to note that after omitting the flange braces in 1995, ECE was contracted to structurally evaluate and perform work on the 1995 building in 1999.  As part of the 1999 project, ECE provided its subcontracted structural engineer, ONM, with the sealed construction plans for the 1995 building and a cover sheet marked "As Built Drawings," **but did not indicate that the flange braces shown on the drawings were not actually installed**.  (Exhibit H, MacIntosh Dep. Ex. 109, MacIntosh Dep. pp. 371-373, Appendix B64-B70).  Mr. Williams of ECE, at his deposition, claimed that he was aware of the flange braces being omitted in 1995, but

9

could not recall relaying the omission to ONM.  (Exhibit G, Williams Dep.  pp. 111-114, Appendix B58-B63).

Beyond representing the 1995 building plans as "As Built Drawings," ECE also failed to secure an engineered/sealed construction drawing for modifications to the 1995 building as part of the 1999 project.  (Exhibit I, Anastasi Dep. pp. 166-168, Appendix B71-B75; Exhibit J, Williams Dep. pp. 95, 103-110, Appendix B76-B86).  As part of the 1999 project, ECE modified the 1995 building by, among other things, adding a new steel member to the structure.  Despite knowing that structural drawings for a project must be sealed by a registered engineer, ECE failed to have the plan showing modifications to the 1995 building sealed by a professional engineer licensed in the State of Delaware.  (Id.).  The only document showing the modifications to the 1995 building was a sketch by ONM.  It was never sealed by a licensed professional engineer, yet ECE performed the modifications.  (Id.).  In fact, the document was prepared by an unlicensed engineer who failed the exam to become a Professional Engineer on three ocassions.  (Exhibit I, Anastasi Dep. pp. 166-168, Appendix B71-B75).

Still further, ECE and ONM developed what Mr. MacIntosh defined as an "integrated" relationship over the years whereby ONM would rely on ECE for such things as the general compliance of the existing building to the drawings.  (Exhibit  K, MacIntosh Dep.  pp. 480-481, Appendix B87-B90).  During the 1999 project, ONM specifically relied on ECE to take field measurements of structural members in the 1995 building as part of ONM's evaluation of the building.  (Exhibit L, Williams Dep. pp. 60-63, Appendix B91-B96).  ECE did not reveal the missing flange braces at any point of the "integrated" relationship.

## ARGUMENTS

**I.    STANDARD OF REVIEW**

Plaintiffs generally agree with the standard of review set forth by ECE. However, plaintiffs note that a motion for summary judgment is only appropriate where the moving party is entitled to a judgment as a matter of law **because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof**. Celotex Corp. v. Catrett, 477 U.S. 317, 106 S. Ct. 2548 (1986). Here, ECE has not asserted that the plaintiffs are unable to make a sufficient showing on an essential element of their case, but that in the event plaintiffs assert claims related to negligent acts committed in 1995, such claims should be barred as outside Delaware's six year statute of repose.

**II.    PLAINTIFFS' CLAIMS ARE NOT BARRED BY STATUTE OF REPOSE**

Delaware's Builder Statute (a/k/a statute of repose), 10 Del. C. § 8127 ("the Statute") provides that no action to recover any damages shall be brought against any person performing construction of improvements to real property after the expiration of six years from the date of substantial completion. The Statute bars the right of action even before the injury has occurred, if the injury occurred after the prescribed time period of six years. *See, e.g.*, McConaghie v. Wakefern Food Corp., 2004 Del.Super. LEXIS 165 (2004). However, where the defendant provides additional construction or maintenance services after the repose period ends and within six years of an action be initiated, the Statute will not act as a bar. Id.

In McConaghie, the plaintiff was injured by energized electrical wires remaining from the original construction of a supermarket more than six years prior to the alleged incident. Id. The defendant successfully argued that it only provided construction supervision services during

11

original construction.  Id.  The Court, upon granting the defendant's motion for summary judgment based on the Statute, noted that in the absence of specific facts, supported by affidavit or beyond mere allegations, indicating a connection between the premises and the defendant after completion of original construction, summary judgment must be entered in favor of the defendant.  Id.  Unlike the case at hand, the plaintiff in McConaghie could not establish facts connecting the defendant to the premises after completion of construction.  Plaintiffs, however, have unequivocally established that ECE worked on the 1995 building after original construction and within six years prior to the filing of suit.  The work included designing, supplying and installing the 1999 building, <u>as well as evaluating and physically modifying the 1995 building in the course of the 1999 project</u>. (Exhibit M, Williams Dep. Ex. 118, Williams Dep. pp. 66-70, Appendix B98-B105).

It is also worth noting that ECE's negligence goes beyond failing to correct or disclose the omitted flange braces.  ECE, which is not a licensed structural engineer, performed modifications to the 1995 building in 1999 without having a construction document sealed by a professional engineer in the State of Delaware or a Building Permit.  The specific requirements of the applicable building code, BOCA 1996, in the City of Dover required that:

> **114.1 General:**  The construction documents for new construction, alteration, repairs, expansion, addition or modification for buildings or structures shall be prepared by a registered design professional. . . . The construction documents shall include the name and address of the registered design professional and shall be signed, sealed and dated by the registered design professional in accordance with the professional registration laws of the state of in which the project is to be constructed. (Exhibit N, Appendix B106).

ECE did not have construction documents for the modifications to the 1995 building that were signed, sealed and dated by a registered design professional.  ECE was aware of the need to

have an engineer seal documents showing the structural modification to buildings, but failed to do so. There are further deviations from the standard of care owed by ECE in this case, that need not be detailed in this Answer.

### III.     CONCLUSION

ECE's liability stems, in part, from its failure to disclose material deviations from the 1995 construction plans as part of the 1999 project and to secure sealed construction documents for the 1999 project. The statute of repose is not available where the defendant re-enters the premises after original construction and accepts the contractual responsibility of evaluating the very building it erected for the purpose of supporting new loads created by a new building it was contracted to design/erect. ECE's Motion must be denied.

| **McCullough & McKenty, P.A.** | **Rogut McCarthy Troy LLC** |
|---|---|
| /s/ Bruce W. McCullough  <br>Bruce W. McCullough, Esquire  <br>Delaware ID 3112  <br>1225 N. King Street, Suite 1100  <br>P.O. Box 397  <br>Wilmington, DE 19899-0397  <br>302-655-6749 | _____  <br>Geoffrey W. Veith  <br>One First Avenue – Suite 410  <br>Conshohocken, PA 19428  <br>610-644-5900 |

Dated: August 31, 2005